IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES ex rel. CARL HEMPHILL, (#R19689), | ) ) ) |
| Petitioner, | ) ) |
| v. | ) ) ) |
| MARCUS HARDY, Warden, Stateville Correctional Center, | ) ) ) |
| Respondent. | ) ) |

Case No. 11 C 1282

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Petitioner Carl Hemphill's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). For the following reasons, the Court denies Hemphill's habeas petition. Further, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**BACKGROUND**

Hemphill does not present clear and convincing evidence challenging the statement of facts in the last state court decisions to address his arguments on the merits, which are the Illinois Appellate Court's opinions on direct appeal and post-conviction appeal, and thus the Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *Rever v. Acevedo,* 590 F.3d 533, 537 (7th Cir. 2010). The Court therefore adopts the underlying facts as set forth by the Illinois Appellate Court in *People v. Hemphill,* No. 1-03-0895 (Ill.App.Ct. Mar. 31, 2005) (unpublished) and *People v. Hemphill,* No. 1-06-3481 (Ill.App.Ct. Mar. 19, 2010) (unpublished).

**I. Factual Background**

Following a 2003 bench trial in the Circuit Court of Cook County, Illinois, the trial court convicted Hemphill of first degree murder, aggravated kidnaping, armed robbery, and attempted armed robbery. The court then sentenced him to concurrent sentences of forty years of imprisonment for the murder and ten years of imprisonment for each of the other convictions.

Hemphill's convictions arise out of an incident in which he and his accomplices devised a plan to rob the victim, Terry Sales, a known drug dealer. Upon meeting with Sales, Hemphill held Sales at gunpoint while his accomplices searched Sales' pockets. Finding no drugs or valuables, Hemphill forced Sales into the trunk of Sales' car. After driving Sales' car for a while, Hemphill and his accomplices pulled over and demanded that Sales relinquish his cellular telephone for fear he might contact authorities. Later, the men stopped again, ordered Sales out of the trunk, and returned his car keys to him. When Sales demanded that Hemphill return his cellular telephone, Hemphill shot and killed him. Thereafter, Hemphill provided a signed confession in which he admitted to the robbery, kidnaping, and murder.

Prior to the bench trial, defense counsel filed a motion to suppress statements given to the police. At the suppression hearing, Assistant State's Attorney ("ASA") Sharon Kanter testified that during the morning of April 20, 1999, she met Hemphill at police headquarters. Kanter stated that she told Hemphill that she was a prosecutor and not his lawyer and then read him his *Miranda* rights, after which Hemphill indicated that he understood his rights, agreed to make a statement, and elected to have his statement memorialized by a court reporter. Upon the court reporter's arrival, Kanter again informed Hemphill of his *Miranda* rights and asked him if he understood that she was not his attorney. Hemphill responded yes. At the conclusion of

Hemphill's court recorded statement, he told Kanter that he was not under the influence of any drugs at that time. Hemphill then read and signed each page of the transcript after making corrections. Hemphill's transcribed statement was published for the trial court. After hearing other witness testimony, the trial court denied Hemphill's motion to suppress and the case proceeded to trial.

At sentencing, Hemphill's grandmother, Roselle Holle, testified in mitigation. She stated that when Hemphill was a baby, he fell from a third floor window and that the accident had "sort of taken something away from him." Holle further testified that Hemphill was prescribed Ritalin, which he was still taking. Cheryle Perry, Hemphill's mother, also testified that Hemphill fell when he was a child after which he was taken to the hospital. Perry testified that a doctor at the hospital told Perry that Hemphill's accident "did something to him." She also testified that throughout his childhood, Hemphill was hyperactive. He was placed in special education classes and took Ritalin from first grade through high school. After the trial court considered the factors in aggravation and mitigation, it sentenced Hemphill to concurrent prison terms of 40 years for the murder and 10 years each for the other convictions.

## II.    Procedural Background

Hemphill appealed his conviction to the Illinois Appellate Court arguing that his Fourth Amendment rights were violated when the trial court admitted statements that resulted from an arrest made without probable cause. The Illinois Appellate Court affirmed Hemphill's judgment of conviction on March 31, 2005. Hemphill then filed a petition for leave to appeal ("PLA") to the Supreme Court of Illinois raising two claims: (1) his Fourth Amendment rights were violated when the trial court admitted statements that resulted from an arrest made without probable

3

cause; and (2) the trial and appellate court erred by not holding an evidentiary hearing to determine whether the assistant state's attorney had coerced his confession by telling him she was his attorney. The Supreme Court of Illinois denied Hemphill's PLA on March 29, 2006. Hemphill did not file a petition for a writ of certiorari in the United States Supreme Court after the denial of his PLA.

On June 28, 2006, Hemphill filed a pro se post-conviction petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq*. In his pro se post-conviction petition, Hemphill brought the following claims: (1) his trial counsel was constitutionally ineffective for failing to (a) challenge the admissibility of his confession on the grounds that he was held for more than forty-eight hours after arrest without probable cause, (b) present evidence at the suppression hearing that he had fallen on his head as a child and took Ritalin, (c) present additional witnesses at the suppression hearing who would testify that he did not voluntarily accompany the police officers, and (d) preserve issues for appeal by raising them in a post-trial motion; (2) the trial court erred when it allowed the State to cross-examine him beyond the scope of the direct examination; (3) his arrest was illegal because he was held for more than forty-eight hours without probable cause; (4) he was denied due process when ASA Kanter told him she was his attorney in order to elicit a confession; (5) the evidence at trial was insufficient to convict him; and (6) appellate counsel was constitutionally ineffective for failing to raise trial counsel's ineffectiveness.

On July 28, 2006, the Circuit Court dismissed Hemphill's post-conviction petition. On August 21, 2006, Hemphill filed a pro se motion to reconsider the dismissal of his post-conviction petition that the Circuit Court denied on September 14, 2006. Hemphill then filed a

4

counseled post-conviction appeal arguing that: (1) the trial court violated the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-01, *et seq.*, when it summarily dismissed his post-conviction petition for failing to state the "gist" of a constitutional claim; (2) his trial counsel was ineffective for failing to present evidence at the suppression hearing that Hemphill had fallen on his head as a child and took Ritalin; (3) his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness; and (4) his conviction for attempted armed robbery was void because he could not be convicted of both attempted armed robbery and armed robbery.

On June 20, 2008, the Illinois Appellate Court affirmed the dismissal of Hemphill's post-conviction petition. Hemphill filed a PLA to the Supreme Court of Illinois reasserting all but one of his claims that he raised on appeal, namely, his claim that his conviction was void. The Supreme Court of Illinois denied Hemphill's PLA on September 30, 2009. Hemphill then filed a motion to reconsider the denial of his PLA, and on November 12, 2009, the Supreme Court of Illinois granted Hemphill's motion, vacated the denial of the PLA, and directed the Illinois Appellate Court to vacate its judgment and reconsider it in light of *People v. Hodges,* 234 Ill.2d 1, 332 Ill.Dec. 318, 912 N.E.2d 1204 (Ill. 2009). On March 19, 2010, the Illinois Appellate Court reaffirmed the dismissal of Hemphill's post-conviction petition. Hemphill then filed a PLA arguing that the trial court violated the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-01, *et seq.*, when it summarily dismissed his post-conviction petition for failing to state the "gist" of a constitutional claim. On September 29, 2010, the Supreme Court of Illinois denied Hemphill's final PLA.

### III.     Habeas Petition

Hemphill's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d) was

5

docketed on February 23, 2011.  Construing his pro se allegations liberally, *see McGee v. Bartow,* 593 F.3d 556, 565-66 (7th Cir. 2010), Hemphill's habeas claims include: (1) the trial court violated his Fourth Amendment rights when the court admitted statements into evidence that resulted from an arrest made without probable cause; (2) the trial court violated the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-01, *et seq*., when the court summarily dismissed his post-conviction petition for failing to state the "gist" of a constitutional claim; (3) his trial counsel was constitutionally ineffective for failing to present evidence of his mental health history, namely, that he had fallen on his head as a child and took Ritalin, at the suppression hearing; and (4) his appellate counsel was constitutionally ineffective for failing to raise trial counsel's ineffectiveness.

## LEGAL STANDARDS

**I.    Habeas Standard**

"[I]n all habeas corpus proceedings under 28 U.S.C. § 2254, the successful petitioner must demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Brown v. Watters,* 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)).  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court.  *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Brown v. Finnan,* 598 F.3d 416, 421 (7th Cir. 2010).  In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts

6

that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams,* 529 U.S. at 405; *see also Brown,* 598 F.3d at 421-22.

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See Williams,* 529 U.S. at 407; *Brown,* 598 F.3d at 422. "A state court's decision is 'unreasonable' within the meaning of § 2254(d)(1) only if it is 'so erroneous as to be objectively unreasonable.'" *Bennett v. Gaetz,* 592 F.3d 786, 790 (7th Cir. 2010) (citation omitted); *see also Williams*, 529 U.S. at 410 ("*unreasonable* application of federal law is different from an *incorrect* application of federal law") (emphasis in original); *Wood v. Allen,* 130 S.Ct. 841, 849 (2010) (state court's factual finding not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance."). To be considered objectively unreasonable, a state court's decision must be "well outside the boundaries of permissible differences of opinion." *Bennett,* 592 F.3d at 790 (citation omitted). Put differently, to be reasonable, a state court's decision must be "at least minimally consistent with the facts and circumstances" of the case. *See Williams v. Thurmer,* 561 F.3d 740, 746 (7th Cir. 2009) (citation omitted).

## II.     Exhaustion and Procedural Default

"A state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), 'thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" *Cheeks v. Gaetz,* 571 F.3d 680, 685 (7th Cir. 2009) (citations omitted). In particular, a habeas petitioner must fully and fairly present his federal claims through one full round of state court

7

review before he files his federal habeas petition. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Gray v. Hardy,* 598 F.3d 324, 327 (7th Cir. 2010). "[W]hen a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Woods v. Schwartz,* 589 F.3d 368, 373 (7th Cir. 2009). Procedural default precludes federal court review of a petitioner's habeas claims. *See Ward v. Jenkins,* 613 F.3d 692, 696 (7th Cir. 2010).

## ANALYSIS

I. **Fourth Amendment Claim – Claim 1**

In his first habeas claim, Hemphill asserts that his Fourth Amendment rights were violated by the admission of evidence obtained as a result of an allegedly unconstitutional seizure, namely, his statements that resulted from an arrest made without probable cause. Hemphill's first habeas claim is foreclosed by *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), which holds that when a "State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at the trial." *See id.* at 482; *see also Ben-Yisrayl v. Buss*, 540 F.3d 542, 552 (7th Cir. 2008). In other words, "*Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), holds that federal courts hearing collateral attacks under § 2254 may not enforce the exclusionary rule unless the state judiciary denied the defendant a full and fair opportunity to contest the search or seizure." *Hayes v. Battaglia,* 403 F.3d 935, 939 (7th Cir. 2005). As the Seventh Circuit explains, "'full and fair' guarantees the right to present one's case, but it does not guarantee a correct result." *Cabrera v. Hinsley*, 324

8

F.3d 527, 532 (7th Cir. 2003). Thus, absent a subversion of the hearing process, it is not the federal habeas court's role to determine whether the state trial court made the right decision. *See Ben-Yisrayl,* 540 F.3d at 552.

Here, despite Hemphill's argument to the contrary, there is no evidence in the state court record that there was a subversion of the suppression hearing process. Instead, the state court record shows that the trial court gave Hemphill every opportunity to argue his suppression motion at his suppression hearing, which consisted of two days of witness testimony and a third day of argument. At the suppression hearing, for example, Hemphill put on three witnesses, including his co-defendant, his friend Dorisanne Smith, and an individual who was arrested at the same time as Hemphill. Hemphill also testified on his own behalf. His counsel cross-examined three police officers who were the State's witnesses. After the three day hearing, the Court denied Hemphill's motion. Because Hemphill got the opportunity to fully and fairly present his Fourth Amendment claim to the state courts, collateral review of his Fourth Amendment claim is barred by *Stone v. Powell*. Therefore, the Court denies Hemphill's first habeas claim.

## II. Violation of the Illinois Post-Conviction Hearing Act – Claim 2

In his next habeas claim, Hemphill argues that the post-conviction trial court erred in dismissing his petition because it did not state a gist of a constitutional claim. To clarify, under the first stage of proceedings pursuant to the Illinois Post-Conviction Hearing Act, a petitioner must state a gist of a constitutional claim or the post-conviction trial court will summarily dismiss the post-conviction petition. *See Davis v. Lambert*, 388 F.3d 1052, 1060 (7th Cir. 2004); *see also* 725 ILCS 5/122-2.

Whether the Illinois court misapplied the state law standard under 725 ILCS 5/122-2, however, is not a cognizable claim on federal habeas review. *See Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). In other words, the Court cannot collaterally review the Illinois post-conviction court's application of an Illinois statute. *See Johnson v. Acevedo,* 572 F.3d 398, 402 (7th Cir. 2009) ("A violation of state law is not the basis for federal collateral relief"). As the Seventh Circuit explains, the "remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." *Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004). The Court therefore denies Hemphill's second habeas claim based on the Illinois Post-Conviction Hearing Act.

## III. Ineffective Assistance of Trial and Appellate Counsel – Claims 3 and 4

### A. Trial Counsel

Hemphill also argues that his trial counsel provided constitutionally ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. In particular, Hemphill maintains that his trial counsel was constitutionally ineffective for failing to present evidence of his mental health history, namely, that he had fallen on his head as a child and took Ritalin, at the suppression hearing. Hemphill argues that this evidence would explain why he believed ASA Kanter was his attorney and not the prosecutor at the time he made his statement.

To establish constitutionally ineffective assistance of counsel, Hemphill must show that (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different."

10

*Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If Hemphill fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See id.* at 697 ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant ....")

Having identified *Strickland* as the clearly established federal law, the post-conviction Illinois Appellate Court denied Hemphill's ineffective assistance of trial counsel claim:

> [Hemphill] claims that his trial counsel was ineffective for failing to introduce evidence that his confession was involuntary because he lacked the mental capacity to freely provide a confession. After a thorough review of the record, we find that [Hemphill] has failed to show that he was prejudiced by this alleged error, as his contention that his confession was involuntary is affirmatively rebutted by the record. First, ASA Kanter testified that upon first meeting with [Hemphill], she informed him that she was a prosecutor and not *his* lawyer. [Hemphill] acknowledged that he understood. [Hemphill's] transcribed statement, published for the trial court, reveals that Kanter again ensured that [Hemphill] understood that she did not represent him before proceeding with her questioning.
>
> > ASA Kanter: I talked to you earlier and I explained that I am an assistant state's attorney, a lawyer and a prosecutor and not your lawyer, is that correct?
> >
> > [Hemphill]: Yes Ma'am.
>
> Moreover, despite [Hemphill's] claim that he was taking Ritalin at the time of his confession, [Hemphill] told Kanter at the conclusion of his recorded statement that he was not under the influence of any drugs at that time. [Hemphill] also read and then signed each page of the transcript after making corrections.
>
> Finally, the record reveals that the trial court ordered two pre-trial fitness examinations, neither of which concluded that [Hemphill] had a mental impairment. The second examination, conducted by a psychiatrist, found that "[Hemphill] is in contact with reality and shows no evidence of psychosis, affective disorder, nor any intellectual deficit."
>
> Given these circumstances, we find no merit to [Hemphill's] allegation that he lacked the intellectual competency to comprehend ASA Kanter's clear,

concise, and direct admonishment that she was a prosecutor and not his lawyer. Therefore, even if counsel erred by failing to introduce evidence of [Hemphill's] childhood accident, no reasonable probability exists that the result of the suppression hearing or the trial would have been different. Because we find that [Hemphill] has failed to show that he was prejudiced by counsel's alleged error, we need not address the issue of whether counsel's performance fell below an objective standard of reasonableness.

*See* Ex. S., *People v. Hemphill,* No. 1-06-3481 at 8-9 (emphasis in original).

The Court would be hard-pressed to conclude that the Illinois Appellate Court unreasonably applied *Strickland* to the facts of this case. In particular, the Illinois Appellate Court thoroughly discussed why Hemphill was not prejudiced by his counsel's failure to present evidence of his mental health history at the suppression hearing. The Illinois court, for example, considered the testimony of ASA Kanter, who testified that she told Hemphill twice that she was not his attorney after which Hemphill stated that he understood. Hemphill also told Kanter that he was not under the influence of drugs at the time of his statement. The Illinois Appellate Court also considered evidence that the trial court ordered two pre-trial fitness examinations – neither of which concluded that Hemphill had a mental impairment. In sum, the Illinois Appellate Court's analysis of prejudice under the second *Strickland* prong was well within the boundaries of permissible differences of opinions. *See Ebert v. Gaetz,* 610 F.3d 404, 412 (7th Cir. 2010) (state court application of *Strickland* unreasonable "only when the state court's application of 'clearly established Federal law' is wholly outside the boundaries of permissible differences of opinion.").

Moreover, the Illinois Appellate Court did not err in only discussing the prejudice prong under the *Strickland* standard because it is well-established that "[c]ourts may deny ineffective assistance of counsel claims for lack of prejudice without ever considering the question of

12

counsel's actual performance." *United States v. Taylor,* 569 F.3d 742, 748 (7th Cir. 2009). For these reasons, the Court denies Hemphill's ineffective assistance of trial counsel claim.

B. **Appellate Counsel**

Hemphill further argues that his appellate counsel provided constitutionally ineffective assistance of counsel. As with ineffective assistance of trial counsel claims, courts apply the two-prong test set forth in *Strickland* to evaluate the effectiveness of appellate counsel. *See Suggs v. United States,* 513 F.3d 675, 678 (7th Cir. 2008). Under the *Strickland* performance prong, an appellate counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is obvious and clearly stronger than the claims counsel raised on appeal. *See id.*; *see also Johnson v. Thurmer,* 624 F.3d 786, 793 (7th Cir. 2010). To establish the *Strickland* prejudice prong under the circumstances, Hemphill must show that "there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." *Brown,* 598 F.3d at 425; *see also Suggs,* 513 F.3d at 678.

In addressing Hemphill's argument that his appellate counsel was constitutionally ineffective for failing to raise trial counsel's failure to introduce the testimony of his diminished mental capacity at the suppression hearing, the Illinois Appellate Court reasoned:

> Claims of ineffective assistance of appellate and trial counsel are subject to the same standard. *People v. Caballero,* 126 Ill. 2d 248, 269-70 (1989). Appellate counsel is neither required to brief every conceivable issue on appeal nor deemed incompetent for refraining from raising issues which in his judgment are without merit, unless counsel's assessment of the issue is patently wrong. *People v. Easley,* 192 Ill. 2d 307, 329 (2000). Therefore, because we have already determined that [Hemphill's] underlying contention is rebutted by the record and without merit, we cannot say that defendant was prejudiced by the omission of the issue on direct appeal.

*See* Ex. S, *People v. Hemphill,* No. 1-06-3481 at 10-11.

Indeed, because Hemphill's argument concerning his trial counsel's ineffectiveness has no merit, his ineffective assistance of appellate counsel claim equally has no merit. To clarify, it is well-established that appellate attorneys do not have to present losing arguments to provide constitutionally effective assistance of counsel. *See Whitehead v. Cowan,* 263 F.3d 708, 731 (7th Cir. 2001) ("[a]ppellate lawyers are clearly not incompetent when they refuse to follow a 'kitchen sink' approach to the issues on appeals.") (citation omitted); *see also Martin v. Evans,* 384 F.3d 848, 852 (7th Cir. 2004) ("counsel is not required to raise every non-frivolous issue on appeal"). Accordingly, the Illinois Appellate Court's decision is not objectively unreasonable, *see Williams,* 529 U.S. at 407, and thus the Court denies Hemphill's fourth habeas claim.

## IV. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Hemphill a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order.

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Sandoval v. United States,* 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El,* 537 U.S. at 336; *Evans v. Circuit Court of Cook County, Ill.,* 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Hemphill must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a

different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). In cases where a district court denies a habeas claim on procedural grounds, the habeas court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack,* 529 U.S. at 485.

First, reasonable jurists would not debate that Hemphill's Fourth Amendment and Illinois Post-Conviction Act claims are not cognizable on habeas review. Moreover, jurists of reason would not debate that Hemphill's ineffective assistance of counsel claims should have been resolved in a different manner. *See Miller-El,* 537 U.S. at 336. Therefore, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Hemphill's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). Also, the Court declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2).

Dated: July 13, 2011

**ENTERED**

**AMY J. ST. EVE**
**United States District Judge**